NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| AMSIE DESHON WRIGHT, | ) |
| | ) |
| Petitioner, | ) Civil No. 10-58-GFVT |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND** |
| KAREN HOGSTEN, Warden, | ) **ORDER** |
| | ) |
| Respondent. | ) |

\*\*\*\*\* \*\*\*\*\* \*\*\*\*\* \*\*\*\*\*

Amsie Deshon Wright is currently confined in the Federal Correctional Institution-Manchester ("FCI-Manchester") located in Manchester, Kentucky. Wright has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the manner in which the Federal Bureau of Prisons ("BOP") has calculated his federal sentence.

The Court reviews Wright's § 2241 petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing 28 U.S.C. § 2254 Cases (applicable to § 2241 petitions under Rule 1(b)). *See, e.g., Patton v. Fenton*, 491 F.Supp. 156, 158-59 (M.D. Pa. 1979)*; see also* 28 U.S.C. § 2243. The Court may summarily dismiss a petition if it appears from its face that the petitioner is not entitled to relief. *See* 28 U.S.C. § 2243; *Blevins v. Lamanna*, 23 Fed. App'x 216, 218 (6th Cir. 2001); *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970).

**I.**

Wright alleges that the BOP has refused to apply all proper pre-sentence credits to his current federal sentence, and that this denial violates his right to due process of law guaranteed by the Fifth Amendment to the United States Constitution. Specifically, Wright seeks credit for the time he served in the custody of Michigan state officials for the period between January 28, 2005, and December 6, 2005, almost eleven months.

Wright asserts various legal arguments in support of his claim. For the reasons set forth below, the Court will deny Wright's § 2241 petition. The Court will dismiss with prejudice the claims Wright asserted through the BOP's administrative remedy process. Further, the Court will dismiss without prejudice the claims he did not assert in the BOP's administrative remedy process but raised for the first time in his § 2241 petition.

**II.**

The Court has constructed the following sequence of relevant events obtained from Wright's § 2241 petition, the attachments thereto, and the information available through the Public Electronic Access to Public Records ("PACER") database website, which compiles information concerning criminal and civil actions filed in all federal courts:

(1) <u>January 28, 2005</u>: Wright was arrested by Michigan state authorities and charged with drug and weapons offenses. At the time of his arrest, Wright was on parole from a prior state sentence imposed in Grand Rapids Circuit Court, Case No. 02-112-F;

(2) <u>May 4, 2005</u>: Michigan state officials revoked Wrights' parole granted in Grand Rapids Circuit Court, Case No 02- 112-F;

(3) <u>August 5, 2005</u>: A Felony Information charging Wright with committing federal

drug and firearm violations was filed against Wright in federal court in Michigan. *See United States v. Wright*, Case No. 1:05-CR-00189-RHB (W.D. Mich) ("the Federal Court");

(4)     August 12, 2005: The Federal Court issued a writ of habeas corpus *ad prosequendum* for Wright to appear there on August 29, 2005;

(5)     September 2, 2005: Wright appeared in Federal Court where he entered a guilty plea to the federal charges;

(6)     December 6, 2005: The Federal Court sentenced Wright to serve a total term of 180 months as to Count One (violation of 21 U.S.C. § 841(a) and (b)) and 120 months as to Count Two (violation of 18 U.S.C. § 922(g)), to be served concurrently and to be served concurrent with his undischarged term of imprisonment imposed under any previous state sentence;

(7)     December 7, 2005: Wright was returned to the custody of Michigan state officials;

(8)     January 27, 2006: The Michigan Board of Parole continued Wright's parole revocation for sixty (60) months based on his January 28, 2005 arrest; and

(9)     January 27, 2009: Wright was granted an early parole and ". . . was thereafter released into the exclusive custody of the United States Marshall [sic]." [R. 2-1, p. 5.]

Wright alleges that the BOP should credit his federal sentence with the period of time between January 28, 2005, and December 6, 2005, because: (1) he is entitled to "jail credit" on his sentence under 18 U.S.C. § 3585(b); (2) the Michigan facility in which he was confined between January 28, 2005, and December 6, 2005, qualifies for retroactive, or *nunc pro tunc* designation, a remedy in some cases involving concurrent sentences; (3) he is entitled to "*Willis*"

credits, pursuant to the holding in *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971)[1] and incorporated into BOP policy at Program Statement ("PS") 5880.28, *Sentence Computation Manual*; and (4) he is entitled to "*Kayfez*" credits, based on the reasoning of the Seventh Circuit's decision in *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993).[2]

### III.

### 1.

Wright has administratively exhausted some, but not all, of the claims he asserts in this proceeding. Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, federal courts consistently require federal prisoners to fully exhaust the available administrative remedies within the BOP before filing a petition seeking habeas corpus relief pursuant to § 2241. *See, e.g., Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993); *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (per curiam); *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir.

---

[1] To be eligible for *Willis* credits: (1) the prisoner's federal and state sentences must be concurrent; and (2) the prisoner's federal sentence must run longer than the state sentence (not counting any credits). When the prisoner meets both criteria, then he or she is entitled to credits, and the amount of the credits is to be calculated as follows:

> Prior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that the first sentence begins to run, federal or non-federal. These time credits are known as *Willis* time credits.

P.S. 5880.28(2)(c).

[2] In *Kayfez*, the Court fashioned a remedy for a prisoner who began service of his federal sentence after his concurrent non-federal sentence had been vacated, thus destroying all concurrent credit. According to *Kayfez*, if: (1) the non-federal and federal sentences are concurrent; (2) the Raw Expiration Full Term ("EFT") date of the non-federal term is greater than the Raw EFT of the federal term; and (3) if the non-federal Raw EFT, after application of qualified non-federal presentence time, is reduced to a date that is earlier than the federal Raw EFT, then a prisoner is entitled to pre-sentence credit.

1998); *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir. 1981) (per curiam). The exhaustion doctrine promotes a number of desirable goals including filtering out frivolous claims and developing a full and complete factual record. *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988).

The BOP's Administrative Remedy Program, a three-tier process, is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement," except tort claims, inmate accident compensation claims, and Freedom of Information or Privacy Act requests. *See* 28 C.F.R. §§ 542.10, 542.12(b). To exhaust an administrative remedy, an inmate must initially attempt to informally resolve the issue with staff by submitting a BP-8. *See* 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counselor)" within twenty days of the date on which the basis for the Request occurred, or within any extension permitted. *See* 28 C.F.R. 542.14.

The Warden is required to respond to the BP-9 Request within twenty calendar days, but the inmate "may consider the absence of a response" within twenty days or forty days, if the inmate has been informed in writing of the need for an extension, to be a denial. *Id*. An inmate who is dissatisfied with the Warden's response may submit a BP-10 Appeal to the Regional Director of the BOP within twenty days of the date the Warden signed the response. *See* 28 C.F.R. § 542.15(a). The inmate may appeal to the General Counsel on a BP-11 within thirty days of the date the Regional Director signed the response. *Id*. Appeal to the General Counsel is the final administrative appeal. *Id*.

On June 25, 2009, Wright filed a BP-9 Request in which he stated as follows:

> I am not being credited for 11 months and need your department to
> fix wrongful computations. While on parole I was arrested on 1-

5

> 28-05 (- - - -).³ 8/05 while still in state custody I was indicted by
> the Feds. In your records I am only being credited from 12-6-05
> until now when I should be credited from the date of offense which
> was 1-28-05.
> I look forward to your prompt response and helping me with my
> concern.

[R. 2-2, p. 7.]

In this BP-9 Request, Wright neither mentions the applicability of *Willis* and/or *Kayfez* credits, nor attempts to invoke the holding of either case. On August 5, 2009, Warden Karen Hogsten denied Wright's BP-9 [*id*., p. 8], stating that: (1) the BOP calculated Wright's sentence as commencing on the date of imposition, December 6, 2005; (2) the BOP did not award any pre-sentence (jail) credit, because 18 U.S.C. § 3585 prevents the awarding of credit on a federal sentence if the time has been credited to a state sentence or to time spent in service of a state sentence; and (3) because all jail credit from Wright's initial arrest on January 28, 2005, had been credited to his state sentence, he could not receive double credit for the period of time between January 28, 2005, and December 6, 2005.

In his BP-11 appeal,⁴ Wright specifically states that he is requesting that eleven months of "jail credit" be applied to his federal sentence based on 18 U.S.C. § 3585. [R. 2-2.] On November 18, 2009, Harrell Watts, Administrator of the National Inmate Appeals, denied Wright's BP-11 appeal. [*See id*., pp. 11-12.] Specifically, Watts stated:

---

³
Wright wrote some additional words in this space and then drew a line through them.

⁴
Wright did not attach his BP-10 appeal to the Mid-Atlantic Regional Office or any response thereto. It is logical, however, to assume that he filed the BP-10 appeal and that it was rejected on the merits. Had there been some procedural default or defect at the BOP Regional level, the BOP Central Office would have issued a "Rejection Notice" instead of addressing Wright's BP-11 appeal on the merits.

6

> A review of your case reveals that the period of time you are requesting represents time that was applied towards the parole violation term that was revoked on May 4, 2005, by the Michigan State Department of Corrections. Although the federal term imposed on December 6, 2006, was ordered to run concurrent, that does not mean that the two terms will begin on the same date. The fact that they are concurrent merely means that they are both running at the same time.

[*Id.*, p. 11.] Watts explained that on February 13, 2009, the BOP granted a *nunc pro tunc* designation and had designated the Michigan Department of Corrections ("MDOC") as the facility for service of Wright's federal sentence for the period of time between December 6, 2005 (the date that the Federal Court imposed the sentence), and January 26, 2009 (the date on which Wright came into exclusive federal custody), in accordance with BOP Program Statement 5160.05. To the extent that Wright asked the BOP to calculate his sentence as commencing on January 28, 2005, instead of the date on which it was actually imposed, Watts denied the request, explaining that "Section 3585(a) makes no provision for a retroactive imposition of a sentence. Your federal sentence could not commence before the Court imposed it on December 6, 2005." [*Id.*, p. 12.] Watts determined that awarding the requested "jail credit" would be giving Wright double credit for time which had already been applied to his state parole violation term.

On February 26, 2010, Wright filed the instant § 2241 petition. In his petition, he asserts detailed arguments claiming that he is entitled to *Willis* and/or *Kayfez* credits on his concurrent federal sentence.

### 2.

The controlling statute in this case provides as follows:

**18 U.S.C. § 3585. Calculation of a term of imprisonment**

**(a) Commencement of sentence.**--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

7

> (b) **Credit for prior custody**.--A defendant shall be given credit toward the
> service of a term of imprisonment for any time he has spent in official detention
> prior to the date the sentence commences–
> > (1) as a result of the offense for which the sentence was imposed;
> > or
> > (2) as a result of any other charge for which the defendant was
> > arrested after the commission of the offense for which the sentence
> > was imposed;
>
> *that has not been credited against another sentence.*

28 U.S.C. § 3585 (emphasis added).

Wright has submitted a letter, dated July 17, 2009, from K. Brunner of the MDOC, Central Time Computation Unit. [R. 2-2, p. 13.] This letter appears to be in response to a prior inquiry from Wright asking if the MDOC had credited the time he time spent in custody between January 28, 2005, and December 6, 2005. Brunner responded:

> As stated in my first response, all time spent in custody while in the county jail on
> parole status was counted toward the maximum term of your existing prison
> sentence. This time is not considered jail credit, your maximum term simply
> continued to run without interruption. . . .
>
> . . . .Your prison term did not stop or re-start due to parole of your arrest- your
> time never stopped running from your original adjusted corrected date.
>
> I hope this clarifies my previous response.

[*Id*.] Thus, according to the MDOC, Wright has in fact received credit on his prior state sentence for the period of time he spent in custody between January and December 2005. Thus, to the extent Wright seeks credit on his federal sentence for the same time period based on 18 U.S.C. § 3585, he is not entitled to relief.

Under § 3585(a), Wright's federal sentence could not begin until his commitment to federal prison for service of that sentence: in this case, December 6, 2005. Wright's appearance in federal court pursuant to a writ of *habeas corpus ad prosequendum* did not effect a change in his custody. The long-standing law is that such a writ is only a mechanism whereby the prisoner

is "borrowed" by federal authorities, while the State retains "primary" jurisdiction over him. *Thomas v. Brewer,* 923 F.2d 1361, 1366-67 (9th Cir. 1991) (producing state prisoner under writ of habeas corpus *ad prosequendum* does not relinquish state custody); *Salley v. United States,* 786 F.2d 546, 547-48 (2d Cir. 1986) (defendant produced and sentenced in federal court via writ of habeas corpus *ad prosequendum* did not begin to serve consecutive federal sentence until delivered into federal custody). Case law establishes that actual federal custody commences only when the state authorities relinquish the prisoner upon satisfaction of his obligation to the State, not because of an interim writ. *Thomas v. Whalen,* 962 F.2d 358, 361 n. 3 (4th Cir. 1992); *Hernandez v. United States Attorney General,* 689 F.2d 915, 918-19 (10th Cir. 1982); *Roche v. Sizer,* 675 F.2d 507, 509-10 (2d Cir. 1982); *see also United States v. Insley,* 927 F.2d 185, 186-87 (4th Cir. 1991) (holding that "official detention" in 18 U.S.C. § 3585 – the successor statute to section 3568 – means "physical incarceration").

In *Huffman v. Perez*, 230 F.3d 1358 (Table), 2000 WL 1478368 (6th Cir. Sept. 27, 2000), Huffman alleged that he was entitled to credits for more than two years, during which he was primarily in the custody of the North Carolina Department of Corrections and only secondarily in the custody of the United States Marshals, pursuant to a writ of *habeas corpus ad prosequendum*. The Sixth Circuit ruled against Huffman, stating as follows: "The length of time . . . spent on the federal writ of *habeas corpus ad prosequendum* does not require a departure from the general rule prohibiting credit on a federal sentence for time spent serving a state sentence." *Id.* at 1359 (citation omitted). The *Huffman* Court decided that because the prisoner received credit on his State sentence for the period of his incarceration up to the commencement of his federal sentence, crediting him for the same time again would result in "[i]mproper double credit." *Id.* (citing *McClain v. Bureau of Prisons*, 9 F.3d 503, 505 (6th Cir. 1993)." *See also Broadwater v.*

*Sanders*, 59 Fed. App'x 112, 113-14 (6th Cir. 2003) ("Because Broadwater received credit toward his state sentence for the time period in question, he may not receive credit for this time toward his current federal sentence. . . . If Broadwater were credited for this time against his current federal sentence, he would receive improper double credit.") (internal citations omitted). Under this authority, Wright is not entitled to credit for the time he spent in federal custody pursuant to a writ of *habeas corpus ad prosequendum*.

Under subsection (b) of Section 3585, the Attorney General, through the BOP, is given the authority to grant a prisoner credit for pre-sentence detention. *Id.*; *United States v. Wilson*, 503 U.S. 329, 333-35 (1992); *United States v. Westmoreland*, 974 F.2d 736, 737 (6th Cir. 1992), *cert. denied*, 113 S. Ct. 1818 (1993). In the last line of the statute, however, Congress has specified that the credits are limited to time "that has not been credited against another sentence." 18 U.S.C. § 3585(b). As K. Brunner of the MDOC explained in his letter to Wright, the MDOC credited Wright's state sentence with all of his time served between January 2005 and December 6, 2005. Accordingly, further credit for this time period on Wright's federal sentence is barred under § 3585(b).

To the extent that Wright seeks a *nunc pro tunc* designation under the authority of *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1991), the record reveals that such designation has been made, rendering Wright's request on the issue moot.[5] Harrell Watts explained that on February 13,

---

[5]

In *Barden*, the Third Circuit held that the BOP's authority under 18 U.S.C. § 3621(b) to designate the penal institution where a federal prisoner will serve his federal sentence includes the authority to designate, *nunc pro tunc* (or "after the fact"), the state prison where the defendant had been serving his state sentence as the place where he was serving his federal sentence. *Barden*, 921 F.2d at 480. The practical effect of such a designation is to grant the federal prisoner credit against his federal sentence for all of the time spent in state custody, in effect serving the two sentences concurrently. The BOP has accepted the rule of *Barden* and set forth the factors to be considered in determining whether to make such a

10

2009, the BOP made the *nunc pro tunc* designation, in Wright's favor, retroactively effective to December 6, 2005, the date Wright's federal sentence was imposed in the Federal Court.

Under §3585(a), a sentence to a term of imprisonment begins on the date the defendant is received into official custody. In this case, Wright was not received into "official federal custody" until January 26, 2009, the date on which he completed his state sentence. Because the BOP made a *nunc pro tunc* designation, however, Wright received substantial credit to his federal sentence for a period of time exceeding three years in which he served in state custody.

### 3.

Because the Federal Court ordered Wright's federal sentence to run concurrent with his state sentence, Wright now asserts in his § 2241 petition, for the first time, entitlement to *Willis* and *Kayfez* credits. The only claims Wright asserted in his administrative remedies, however, were: (1) a broadly worded request for "jail credit," and (2) a request for a *nunc pro tunc* designation, which the BOP has since explained that it did in fact issue. Wright did not assert claims relating to *Willis* and *Kayfez* credits in the administrative remedies he provided to the Court. Consideration of *Willis* credits involves consideration of two criteria (i.e., that the state and federal sentences must be concurrent and that the federal sentence is to run longer than the state sentence), and consideration of *Kayfez* credits involves detailed mathematical computations of the Raw Expiration Full Term ("EFT") dates of both the federal and state sentences.

Since neither Warden Hogsten nor Harrell Watts mentioned *Willis* or *Kayfez* credits in their respective denials of Wright's BOP administrative remedies, it is logical to assume that they were unable to discern that Wright was even asserting such claims during the administrative

---

designation in Program Statement 5160.05.

11

exhaustion process. The BOP should first be allowed to address whether credits under either doctrine are applicable; establish the EFT of both sentences; and, if either of the credits are applicable, prepare a chart computing the applicable amount of credits to be applied to Wright's sentence. Therefore, these particular claims will be dismissed without prejudice to Wright administratively exhausting the newly asserted *Willis* and *Kayfez* credit claims through the BOP remedy process, 28 C.F.R. §§ 542.13-20, and filing a new § 2241 petition as to these claims if he receives an adverse response. Authority exists for doing so when a § 2241 petitioner fails to raise specific arguments pertaining to sentence credit during the administrative exhaustion process, while instead asserting others.

In *Shahid v. Shultz*, Civil No. 06-6159, 2007 WL 4571101, at *7 (D. N.J. Dec. 21, 2007), the district court concluded that although Shahid asserted in his § 2241 petition a request that the BOP designate a New Jersey prison as the place of confinement for the final days of his concurrent federal sentence, he had not raised that precise claim during the administrative exhaustion process. *Id*. Because Shahid had asked the BOP only for pre-sentence custody under PS 5880.28, the district court instructed him to submit his *nunc pro tunc* request to the BOP for formal resolution. *Id*.

In *Baker v. Stine*, No. 6:07-CV-00040-DCR, 2007 WL 1875659, at *10 (E.D. Ky. June 28, 2007), Baker argued during the administrative exhaustion process that he was entitled to sentencing credits on various grounds, but those grounds did not include a request for a *nunc pro tunc* designation. When the BOP Central Office denied Baker's BP-11 appeal, it cursorily mentioned and rejected the applicability of a *nunc pro tunc* designation. *Id*. at * 10. The court determined that because the *nunc pro tunc* issue had not been fully developed, it would be dismissed without prejudice to Baker bringing another § 2241 proceeding after he

administratively exhausted the issue ". . .to simultaneously obtain a record for both administrative and judicial review of resolution of the issue." *Id*. Specifically, the court explained,

> Like the Petitioner, the Court also has no record of Baker's consideration for a *nunc pro tunc* designation, nor of the reasons it was denied. Baker, however, has the BOP administrative remedy system still available to him to make a request for a *nunc pro tunc* designation and then to appeal the matter to exhaustion, thereby creating a record for the Court's review. It must be remembered that one of the reasons for the exhaustion of administrative remedies requirement is to prepare a record.

*Id.* (citing *Brice v. Day*, 604 F.2d 664 (10th Cir.), *cert. denied*, 444 U.S. 1086 (1980)).

The foregoing considerations apply equally to the unexhausted aspects of Wright's § 2241 petition. According to the "Inmate Locator" feature of the the BOP's website, www.bop.gov, Wright's actual or projected release date is not until December 31, 2018, well over eight years from now. The administrative exhaustion process takes approximately ninety days absent extensions of time, and 120 days if the BOP opts to extend the time for responding to the claims. In light of that time-frame, Wright will not be prejudiced by the decision to dismiss his *Willis* and *Kayfez* credit claims without prejudice so that he can avail himself of the exhaustion process. If the BOP determines that any sentencing credits under *Willis* or *Kayfez* are warranted, over and above those already applied, further judicial review will be unnecessary and the goals of administrative exhaustion will have been achieved.

## IV.

Accordingly, **IT IS ORDERED** as follows:

(1) Petitioner Amsie Deshon Wright's § 2241 petition is **DENIED** as follows:

(A) Wright's § 2241 claim seeking only "jail credit" under 18 U.S.C. § 3585(a) and (b) for the period of time between January 28, 2005, and December 6, 2005, is **DISMISSED WITH PREJUDICE**;

(B) Wright's § 2241 claim seeking a *nunc pro tunc* designation for the period of time between January 28, 2005, and December 6, 2005, is **DISMISSED WITH PREJUDICE**;

(C) Wright's § 2241 claims seeking pre-sentence credits under *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971), and/or *Kayfez v. Gasele*, 993 F.2d 1288 (7th Cir. 1993), are **DISMISSED WITHOUT PREJUDICE** to Wright raising such claims through the Bureau of Prisons Administrative Remedy Procedures, 28 C.F.R. § 542.13-19, and filing a new § 2241 petition if the issues are decided against him;

(2) This proceeding is **DISMISSED**; and

(3) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the respondent.

This the 19th day of May, 2010.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge